UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL ANTHONY CAPERS,

    Applicant,

v.                                                              CASE NO. 8:21-cv-1744-SDM-CPT

SECRETARY, Department of Corrections,

    Respondent.
_____/

## ORDER

    Capers applies under 28 U.S.C. § 2254 for a writ of habeas corpus (Doc. 1) and challenges his two convictions for robbery with a firearm, for which Capers is imprisoned for life. Numerous exhibits support the response. (Doc. 7) The respondent argues the application is time-barred (Doc. 6), and Capers replies that newly discovered evidence supports his application. (Doc. 1 at 20–21)

    "A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). "The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A) and (d)(1)(D). "The time during which a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The respondent argues that the applicable limitation began under Section 2244(d)(1)(A) — "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." (Doc. 6 at 6) Capers argues that the applicable limitation began under Section 2244(d)(1)(D) — "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." (Doc. 1 at 20–21)

In his application Capers asserts that two newly discovered affidavits by Natasha Mond, a victim of one of the robberies, demonstrate his actual innocence. (Doc. 1 at 6–7) The post-conviction court dismissed as untimely the claim based on the first affidavit by Mond (Doc. 7-1 at 178–80) (state court record citations omitted):

> Defendant alleges one claim of newly discovered evidence as to his convictions on the robbery charges, for which he was sentenced to life in prison. Specifically, Defendant alleges that one of the victims, Natasha Mond, prepared an affidavit stating[:] "To whom it may concern[,] I, Natasha Mond, never [saw] Michael Capers['s] face and feel it's been long enough for him and [would] like for him to be released from prison now. [N. Mond] 8/[6]/18." Defendant interprets this affidavit as asserting that: "Ms. Mond did not witness the defendant during the crime." He alleges that this information could not have been discovered prior to Ms. Mond making her disclosure. He contends, as a result, the reversal of his conviction is necessary to correct a manifest injustice. Defendant attaches to his motion a copy of the affidavit prepared by Natasha Mond.
>
> . . .
>
> The court finds Defendant has not alleged a claim of newly discovered evidence as contemplated by Rule 3.850(b)(l). The

> affidavit attached to Defendant's motion is not evidence of such a nature that it would probably produce an acquittal on retrial or result in a less severe sentence. *See Marek*, 14 So. 3d at 990 ("If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence."). In particular, Ms. Mond's current assertion that she did not see Defendant's face is consistent with her testimony at trial. At trial, Ms. Mond testified two men wearing ski masks, one of them with a gun in his hand, approached her. She testified the man with the gun had gold teeth. On cross-examination, Ms. Mond testified she did not know who fired the gun. She testified the man with the gold teeth said, "Give it up." When asked if Defendant was the person who said "give it up," Ms. Mond never identified Defendant and instead testified that she never saw the person's face. The assertion in her affidavit is the same as her trial testimony — namely, Ms. Mond is still asserting that she did not see Defendant's face during the robbery. As Ms. Mond's affidavit does not provide any information that was not already known at trial, the court finds that her assertions are not newly discovered evidence and further finds her affidavit would not likely produce an acquittal on retrial. . . .

The post-conviction court dismissed as untimely the claim based on the second affidavit by Mond (Doc. 7-1 at 268–71) (state court record citations omitted):

> Defendant alleges victim Natasha Mond has provided a new affidavit. In the new affidavit, which is attached to Defendant's second motion, Ms. Mond asserts:
>
>> On the day I was robbed by two men at gunpoint in the area of Robles Park[,] [t]he two men wore ski masks, one of which had a mouthful of gold teeth. The entire incident lasted a total of four minutes. I was told to run, and I heard a gunshot. It wasn't until the trial that I was asked to identify the gold teeth. I feel I was influenced by other people to say that it was the defendant.
>
> Defendant alleges he could not discover this information sooner because Ms. Mond "had not previously agreed to submit a sworn statement." He alleges the information in the affidavit weakens the case against him and contends this new evidence compels a new trial.
>
> . . .

- 3 -

> The court finds Defendant has not alleged a claim of newly discovered evidence as contemplated by Rule 3.850(b)(1). Ms. Mond's updated affidavit is not evidence of such a nature that it would probably produce an acquittal on retrial or result in a less severe sentence. *See Marek*, 14 So. 3d at 990 ("If the defendant is seeking to vacate a sentence, the second prong requires that the newly discovered evidence would probably yield a less severe sentence."). Ms. Mond's new affidavit asserts she was robbed at gunpoint by two men in ski masks and asserts that one of the men had gold teeth. Consistent with her updated affidavit, at trial she testified she was robbed at gunpoint by two men in ski masks and testified one man had gold teeth.
>
> As the court found in its last order, at trial Ms. Mond never identified Defendant as one of the gunmen. Instead, Ms. Mond testified she never saw the faces of her robbers. Therefore, her assertion that she feels she was "influenced by other people to say that it was the defendant" is not evidence of such a nature that would produce an acquittal on retrial because Ms. Mond never identified Defendant at trial as one of the robbers. The record reflects that at trial Ms. Mond did identify the person with the gold teeth as the person who told the victims to "give it up," and identified the person who said "give it up" as the person who shot the gun, but the court finds Ms. Mond's updated affidavit does not contradict her trial testimony.
>
> Similar to the court's finding in its January 14, 2019, final order, the court finds Ms. Mond's updated affidavit does not provide any information that was not already known at trial. Consequently, the court finds her assertions are not newly discovered evidence and further finds her updated affidavit would not likely produce an acquittal on retrial. . . .

Capers fails to present evidence that clearly and convincingly rebuts the post-conviction court's factual determinations. (Doc. 1 at 7–10) 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

At trial Mond testified that two males wearing ski masks approached her and her friends, and one of the males, whose teeth appeared plated with gold, brandished a firearm, yelled "give it up," grabbed Mond's purse, and discharged the firearm. (Doc. 7-1 at 347–51, 353)  Mond denied that she could identify the armed robber (Doc. 7-1 at 353–54):

| | |
|---|---|
| [Trial counsel:] | Well, the guy who said, "Give it up," is that the guy that's sitting over there? |
| [Mond:] | I didn't see his face. |
| [Trial counsel:] | You didn't see his face — |
| [Mond:] | No. |
| [Trial counsel:] | — but you saw his gold teeth? |
| [Mond:] | Yeah. |

In the first affidavit Mond states that she never saw Capers's face. (Doc. 1 at 6)  In the second affidavit Mond states that other people pressured her to identify Capers as the armed robber. (Doc. 1 at 6)  Because both affidavits serve as a factual predicate for Capers's claim and because Capers knew at trial that Monds could not identify the armed robber, neither affidavit supports commencing the limitation under Section 2244(d)(1)(D) — "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  *See Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014) ("'[I]t should go without saying that a factual predicate must consist of *facts*. Conclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim.'") (italics in original and citation

omitted). *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008), *vacated on other grounds*, 561 U.S. 1001 (2010) ("Due diligence means the petitioner 'must show some good reason why he or she was unable to discover the facts' at an earlier date.").

On February 28, 2007, the state appellate court affirmed Capers's convictions and sentences in a decision without a written opinion (Doc. 7-1 at 14), Florida's supreme court lacked jurisdiction to review the unelaborated decision, and Capers did not seek further review in the United States Supreme Court. *Bates v. Sec'y, Dep't Corrs.*, 964 F.3d 1326, 1329 (11th Cir. 2020) (citing *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006)). The time to seek review in the United States Supreme Court expired on May 29, 2007, ninety days after the state appellate court's decision. *Bates*, 964 F.3d 1326, 1329. Consequently, the limitation under Section 2244(d)(1)(A) — "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" — commenced the next day. Fed. R. Civ. P. 6(a)(1)(A).

Ninety-two days elapsed before Capers on August 30, 2007, filed[1] a motion for post-conviction relief. (Doc. 7-1 at 18–36) The limitation tolled until June 21, 2013, when the mandate issued on the post-conviction appeal. (Doc. 7-1 at 168) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). The limitation expired 273 days later

---

[1] The prison mailbox rule applies to a motion for post-conviction relief filed by a *pro se* prisoner in a Florida court. *Haag v. State*, 591 So. 2d 614, 617 (Fla. 1992).

— March 24, 2014.[2] Because Capers filed[3] his application on July 22, 2021 (Doc. 1 at 23), the application is time-barred.

The post-conviction court dismissed Capers's motion for post-conviction relief and directed Capers to file an amended motion no later than March 14, 2008 (Doc. 7-1 at 41), and Capers filed an amended motion on March 17, 2009. (Doc. 7-2 at 43–64) The respondent asserts that the limitation resumed when the time to file an amended motion expired. (Doc. 6 at 7) However, because the post-conviction court treated the amended motion as timely and properly filed (Doc. 7-1 at 66–67), the amended motion related back to the initial motion for tolling under Section 2244(d)(2). *Morris v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1351, 1356 (11th Cir. 2021) ("Under AEDPA, we cannot . . . ignore the state court's conclusion that [the petitioner's] amended Rule 3.850 motion was timely and properly filed.").

On November 14, 2018, and October 15, 2019, Capers filed two successive motions for post-conviction relief. (Doc. 7-1 at 170–74, 257–64) Even if "properly filed" under Section 2244(d)(2), neither tolled the limitation because Capers filed both after the limitation expired. *Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) ("[O]nce a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it.").

Even if the application is timely, Capers fails to state a claim cognizable on

---

[2] The limitation expired on Saturday, March 22, 2014, and therefore extended to Monday, March 24, 2014. Fed. R. Civ. P. 6(a)(1)(C).

[3] The prison mailbox rule applies to a federal petition filed by a *pro se* prisoner. *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

federal habeas. Capers asserts that the affidavits by Mond demonstrate his actual innocence. (Doc. 1 at 5–7)  State law authorizes post-conviction relief based directly on actual innocence, but federal law does not. *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). *Jones v. State*, 591 So. 2d 911, 915 (Fla. 1991) ("Thus, we hold that henceforth, in order to provide relief [for a post-conviction claim based on newly discovered evidence], the newly discovered evidence must be of such nature that it would *probably* produce an acquittal on retrial.") (italics in original).  In federal court, a claim of "actual innocence" instead serves as "a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred constitutional claim considered on the merits." *Herrera*, 506 U.S. at 404.

Because Capers does not assert actual innocence to seek review of a procedurally barred claim, Capers's claim for relief based on state law — an independent claim of actual innocence — is not cognizable in federal court. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Capers's application for a writ of habeas corpus (Doc. 1) is **DISMISSED** as time-barred. The clerk must enter a judgment against Capers and **CLOSE** the case.

**CERTIFICATE OF APPEALABILITY
AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Because Capers fails to demonstrate either a substantial showing of the denial of a constitutional right or that reasonable jurists would debate both the merits of the grounds and the procedural issues, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Capers must obtain permission from the court of appeals to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on April 22, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE